**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**NORTHERN DIVISION**

| | |
|---|---|
| Ryan Lee, individually and on behalf of all others similarly situated, | 2:22-cv-11958 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Panera Bread Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.       Panera Bread Company ("Defendant") markets and sells an auto-renewing beverage subscription known as the Unlimited Sip Club ("Subscription").



2.       Subscriptions involve the payment of a monthly fee for a product or service.

3.       Though subscriptions were previously only for magazines or newspapers, the range of subscriptions offered to consumers is vast, ranging from personal care items to books to prepared meals.

4.       Companies value subscriptions because it provides consistent revenue and "locks in"

a customer.

5.   Consumers value subscriptions to minimize friction associated with routine transactions.

6.   Industry sources report that consumer subscription services have grown over four hundred percent in the past ten years and will reach to $1.5 trillion by 2025.

## I.   SUBCRIPTION NOT "UNLIMITED"

7.   Defendant introduced a coffee and tea subscription service for $8.99 per month in 2020.

8.   In the spring of 2022, Defendant added soda and lemonade to the service, so subscribers would get access to all self-service beverages for $10.99 per month.

9.   Defendant promotes this service as its "UNLIMITED SIP CLUB," promising customers they can "enjoy endless NEW Charged Lemonades, coffees, teas, and soda."



10.   However, the fine print reveals that the "Unlimited" offer of "Any size. Any Time" means only "once every 2 hours. Plus, unlimited refills while you're in the café."



Now more sips!

In addition to our premium coffee, subscribers can now enjoy NEW Charged Lemonades, teas and soda!



Any size. Any time.

Redeem your cup, once every 2 hours. Plus, unlimited refills while you're in the cafe.

11.     Consumers expect a beverage subscription represented – directly or indirectly – as an unlimited service, to allow for an unlimited number of redeemed drinks and refills.

## II.   DECEPTIVE SUBSCRIPTION PRACTICES

### A.   "Free Trial" Results in Immediate Charges

12.     Defendant entices customers to join its Unlimited Sip Club by a one month free trial.

13.     However, when customers avail themselves of the free trial, they are immediately charged the monthly fee for their first month.

14.     Even where a "free trial" would not result in an immediate charge, tethering a free trial to enrollment in an auto-renewing subscription is a deceptive practice.

15.     This is because it is not "free" because the consumer cannot merely enjoy the service for one month.

16.     They have to make sure they remember to cancel it before the month expires, which imposes a burden on their time and attention.

### B.   Default Autorenewal

17.     When customers sign up, they are automatically enrolled into autorenewal of the service, and they will be continuously billed until they affirmatively cancel.

18.     Other similar services allow customers to "opt-in" to automatic renewal either after the initial term or at other points in their usage.

19.    By adopting a default autorenewal, Defendant takes advantage of consumer inertia.

20.    Autorenewal users are seven times more likely to "continue," or not cancel, their subscriptions after the initial period, compared to users enrolled in an autocancel subscription.

21.    Psychological studies show that consumers tend to procrastinate on mundane tasks especially where they are deemed to be boring or difficult, which includes cancelling subscriptions.

22.    Researchers have identified "status quo bias" as making consumers susceptible to "sludge," where people are unlikely to depart from a default option, even where it would be in their interest to do so.

23.    One study involved participants who believed there was an 80% chance they would fill in forms to obtain money back in a promotion, when only 30% of consumers actually did so.

24.    Defendant's terms of service also allow it to increase the subscription price and continue charging customers the higher price.

25.    Defendant fails to provide a pro-rated refund for consumers depending on when they cancel relative to where they are in their subscription term.

C.  Cancellation Methods are Not Displayed Prominently

26.    Defendant puts obstacles in front of consumers seeking to cancel their subscription.

27.    There is no readily accessible cancellation link in the account section.

28.    Instead, the instructions for cancellation are buried in Section 7.2 of the Terms and Conditions.

29.    This instructs customers to visit a URL or the subscription page in the mobile application or call a phone number.

30.    If users go to the link provided, they will not immediately see the cancellation link.

31.    Instead, they need to scroll to the bottom of the page where there is a small font link

to "Cancel Subscription."

32.    Once they select this option, Defendant interferes with their choice by attempting to prevent their cancellation by a discounted monthly rate.

33.    These tactics have been identified as harmful to consumers seeking to cancel subscriptions by deterring consumers who wanted to cancel their subscriptions.

34.    Defendant fails to send reminders to customers prior to their automatic renewals each month.

35.    Even where users fail to use the service, Defendant fails to remind consumers they have subscribed to and are paying for it.

36.    Defendant makes other representations and omissions with respect to the service which are false and misleading.

37.    The value of the Subscription that Plaintiff subscribed to was materially less than its value as represented by Defendant.

38.    Defendant sold more of the Subscription and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

39.    Had Plaintiff and proposed class members known the truth, they would not have subscribed to the Subscription or would have paid less for it.

40.    As a result of the false and misleading representations, the Subscription is sold at a premium price, approximately no less than $10.99 per month, excluding tax and sales, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

41.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

42.     The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

43.     Plaintiff Ryan Lee is a citizen of Michigan.

44.     Defendant Panera Bread Company is a Delaware corporation with a principal place of business in St. Louis, St. Louis County, Missouri.

45.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

46.     The members of the class Plaintiff seeks to represent are more than 100, because the subscription program identified here has been available for at least a year with the practices identified here, in the states covered by Plaintiff's proposed classes.

47.     Venue is in the Northern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Saginaw County, including Plaintiff's subscription to and/or use of the Subscription and awareness and/or experiences of and with the issues described here.

<u>Parties</u>

48.     Plaintiff Ryan Lee is a citizen of Saginaw, Saginaw County, Michigan.

49.     Defendant Panera Bread Company is a Delaware corporation with a principal place of business in St. Louis, Missouri, St. Louis County.

50.     Panera operates over 2,000 bakery-café fast casual restaurants across the United States, selling soups, sandwiches, breads, baked goods and beverages.

51.     Defendant's registered agent in its state of incorporation is Corporation Service Company, 251 Little Falls Dr Wilmington DE 19808.

52.     Plaintiff subscribed to and used the Subscription on one or more occasions within

the statutes of limitations for each cause of action alleged, at Panera Bread bakery-cafes, including

the  location at 2710 Tittabawassee Rd, Saginaw MI 48604-9432, on April 20, 2022, and/or among

other times.

53.   Plaintiff believed and expected that the Subscription provided a free trial which did

not charge users for their first month, an unlimited number of drinks, he would not be enrolled into

autorenewal, that he would receive a pro-rated refund if he cancelled his subscription prior to the

renewal date, he would not be charged higher fees without having the option beforehand to cancel,

cancellation would be as easy as signing up, without having to navigate multiple pages or scroll to

the end of others to find the cancellation link, and that he would not be enticed with an additional

offer not to cancel.

54.   Plaintiff relied on the words, terms coloring, descriptions, and/or images advertising

the Subscription, statements, omissions, claims, and instructions, made by Defendant or at its

directions, in digital, print and/or social media, which accompanied the Subscription and

separately, through in-store, digital, audio, and print marketing.

55.   Plaintiff subscribed to the Subscription at or exceeding the above-referenced price.

56.   Plaintiff would not have subscribed to the Subscription if he knew the representations

and omissions were false, unfair and misleading or would have paid less.

57.   The Subscription was worth less than what Plaintiff paid and he would not have paid

as much absent Defendant's false and misleading statements and omissions.

58.   Plaintiff intends to, seeks to, and will subscribe to the Subscription again when he

can do so with the assurance the Subscription's representations are consistent with its abilities,

attributes, and/or composition and there were no material omissions.

59.   Plaintiff is unable to rely on the labeling and representations not only of this

Subscription, but other subscription services, because he is unsure whether those representations are truthful.

Class Allegations

60.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Michigan Class:** All persons in the State of Michigan who subscribed the Subscription during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, Kansas, Montana, Alaska, Arkansas, Wyoming, West Virginia, Kentucky, South Carolina, North Dakota and Utah who subscribed to the Subscription during the statutes of limitations for each cause of action alleged.

61.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

62.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

63.    Plaintiff is an adequate representative because his interests do not conflict with other members.

64.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

65.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

67.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Michigan Consumer Protection Act ("MCPA"),</u>
<u>MCL § 445.901, *et seq.*</u>

<u>(Consumer Protection Statute)</u>

68.    Plaintiff incorporates by reference all preceding paragraphs.

69.    Plaintiff believed the Subscription provided a free trial which did not charge users for their first month, an unlimited number of drinks and refills, he would not be enrolled into autorenewal, that he would receive a pro-rated refund if he cancelled his subscription prior to the renewal date, he would not be charged higher fees without having the option beforehand to cancel, cancellation would be as easy as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and that he would not be enticed with an additional offer not to cancel.

70.    Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer subscribing decisions.

71.    Defendant misrepresented the Subscription through statements, omissions, ambiguities, half-truths and/or actions.

72.    Plaintiff relied on the representations and omissions to believe the Subscription allowed for an unlimited number of drinks, that its free trial did not charge users for the first month, the subscription terms were fair and did not lock him into an auto-renewing subscription which sought to stymie his cancellation.

73.    Plaintiff and class members would not have subscribed to the Subscription or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

74.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

75.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

76.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

77.     As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

78.     Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

79.     The Subscription was identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it provided a free trial which did not charge users for their first month, an unlimited number of drinks, and they would (1) not be enrolled into autorenewal, (2) receive a pro-rated refund if the subscription was cancelled prior to the renewal date, (3) not be charged higher fees without having the option beforehand to cancel, (4) be able to cancel as easily as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and (5) not be enticed with an additional offer not to cancel.

10

80.     Defendant directly marketed the Subscription to Plaintiff and consumers through its advertisements and marketing, through various forms of media and targeted advertising.

81.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing directly meet those needs and desires.

82.     Defendant's representations about the Subscription were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it provided a free trial which did not charge users for their first month, an unlimited number of drinks and refills, and he would (1) not be enrolled into autorenewal, (2) receive a pro-rated refund if the subscription was cancelled prior to the renewal date, (3) not be charged higher fees without having the option beforehand to cancel, (4) be able to cancel as easily as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and (5) not be enticed with an additional offer not to cancel.

83.     Defendant's representations affirmed and promised that it provided a free trial which did not charge users for their first month, an unlimited number of drinks, and he would (1) not be enrolled into autorenewal, (2) receive a pro-rated refund if the subscription was cancelled prior to the renewal date, (3) not be charged higher fees without having the option beforehand to cancel, (4) be able to cancel as easily as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and (5) not be enticed with an additional offer not to cancel.

84.     Defendant described the Subscription so Plaintiff and consumers believed it provided a free trial which did not charge users for their first month, an unlimited number of drinks, and he would (1) not be enrolled into autorenewal, (2) receive a pro-rated refund if the subscription was cancelled prior to the renewal date, (3) not be charged higher fees without having the option

beforehand to cancel, (4) be able to cancel as easily as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and (5) not be enticed with an additional offer not to cancel, which became part of the basis of the bargain that it would conform to its affirmations and promises.

85.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Subscription.

86.    This duty is based on Defendant's outsized role in the market for this type of Subscription, a trusted company, known for its high-quality food and drink products, honestly marketed to consumers.

87.    Plaintiff recently became aware of Defendant's breach of the Subscription's warranties.

88.    Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Subscription.

89.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

90.    The Subscription did not conform to its affirmations of fact and promises due to Defendant's actions.

91.    The Subscription was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in media and advertising, because it was marketed as if it provided a free trial which did not charge users for their first month, an unlimited number of drinks,

and customers would (1) not be enrolled into autorenewal, (2) receive a pro-rated refund if the subscription was cancelled prior to the renewal date, (3) not be charged higher fees without having the option beforehand to cancel, (4) be able to cancel as easily as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and (5) not be enticed with an additional offer not to cancel.

92.    The Subscription was not merchantable because Defendant had reason to know the particular purpose for which the Subscription was subscribed to by Plaintiff, because he expected it provided a free trial which did not charge users for their first month, an unlimited number of drinks and refills, and he would (1) not be enrolled into autorenewal, (2) receive a pro-rated refund if the subscription was cancelled prior to the renewal date, (3) not be charged higher fees without having the option beforehand to cancel, (4) be able to cancel as easily as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and (5) not be enticed with an additional offer not to cancel, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

93.    Plaintiff and class members would not have subscribed to the Subscription or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

94.    Defendant had a duty to truthfully represent the Subscription, which it breached.

95.    This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its high-quality food and drink products, honestly marketed to consumers.

96.    Defendant's representations and omissions regarding the Subscription went beyond the specific representations in media and advertising, as they incorporated the promises and

commitments to quality, transparency and putting customers first, that it has been known for.

97.   These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

98.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

99.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their subscription to the Subscription.

100.  Plaintiff and class members would not have subscribed to the Subscription or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

101.  Defendant misrepresented and/or omitted the attributes and qualities of the Subscription, that it provided a free trial which did not charge users for their first month, an unlimited number of drinks and refills, and that customers would (1) not be enrolled into autorenewal, (2) receive a pro-rated refund if the subscription was cancelled prior to the renewal date, (3) not be charged higher fees without having the option beforehand to cancel, (4) be able to cancel as easily as signing up, without having to navigate multiple pages or scroll to the end of others to find the cancellation link, and (5) not be enticed with an additional offer not to cancel.

102.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception of its practices, through statements and omissions.

103.  Defendant knew of the issues described here yet did not address them.

104.  Defendant's fraudulent intent is evinced by its knowledge that the Subscription was

not consistent with its representations.

Unjust Enrichment

105. Defendant obtained benefits and monies because the Subscription was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:          August 20, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412

15

Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com