UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RYAN LEE, individually
and on behalf of all other
similarly situated plaintiffs,

       *Plaintiff,*

v.

PANERA BREAD COMPANY,

       *Defendant.*
_____/

Case No. 1:22-cv-11958
District Judge Thomas L. Ludington
Magistrate Judge Patricia T. Morris

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT (ECF No. 4)

### I. RECOMMENDATION

This matter has been referred for Report and Recommendation under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion to Compel and Dismiss the Complaint (ECF No. 4) be **GRANTED**.

### II. REPORT

    **A. Background**

This case involves Defendant Panera Bread Company's auto-renewing "Unlimited Sip Club" subscription in which subscribers pay a monthly fee for self-service beverages. On August 20, 2022, Plaintiff filed suit in this Court, alleging

1

that while Panera touts Sip Club as offering unlimited beverages, "the fine print" shows that the offer is limited to "once every 2 hours . . . while you're in the café." (ECF No. 1, PageID.2, ¶ 10). Plaintiff alleges further that Panera "entices customers" to join Sip Club by offering a free one-month trial but "are immediately charged the monthly fee for their first month" and that members "have to make sure they remember to cancel" the subscription "before the month expires, which imposes a burden on their time and attention." (*Id.* at PageID.3, ¶¶ 12-13, 16). He claims that the methods for canceling Sip Club are not displayed prominently. (*Id.* at PageID.4-5, ¶¶ 26-31). He brings claims under the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901, *et seq.*; the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; and state law claims of negligent misrepresentation, fraud, and unjust enrichment. (*Id.* at PageID.13-16, ¶¶ 94-105).

On December 19, 2022, Defendant Panera filed the present motion, arguing that at the time Plaintiff opted to start the subscription, he assented to resolving all disputes arising from same through arbitration. (ECF No. 4).

    **B.**     **Applicable Law**

The Federal Arbitration Act mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

the revocation of any contract." 9 U.S.C. § 2. The FAA broadly applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). The "central" purpose of the FAA is to "ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-45, 352 (2011) (class action waiver could not invalidate arbitration clause, and to require otherwise would frustrate Congressional purpose).

In light of the strong federal policy favoring arbitration embodied in the FAA, parties must be compelled to arbitrate where: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Arbitration clauses will be enforced unless the party resisting arbitration can show that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). The resisting party's burden is significant, as courts are required to "'rigorously

3

enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); s*ee also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).

    C. Analysis

    1. The Sip Club Subscription

Plaintiff enrolled in the Sip Club on or around April 19, 2022. *Declaration of Meenakshi Nagarajan,* (ECF No. 4-1, PageID.50, ¶ 4). At that time, Panera's website, mobile application, and in-café kiosk contained the following statement directly above the "Start My Subscription" button to enroll in the Sip Club:

> By clicking the 'Start My Subscription' button below, you agree that you will be enrolled in a monthly auto-renewal subscription and will be charged, after the expiration of any applicable offer $11.99[1] plus tax per month on your stored payment method until you cancel your subscription. You further agree to Panera's Terms and Conditions, Terms of Use, and Privacy Policy and that you are 18 years of age or older. You also agree to receive promotional emails (from which you may unsubscribe at any time). Restrictions apply. Click here for complete Terms and Conditions. Cancel anytime.

*Defendant's Exhibits A-C*, (ECF No. 4-2, 4-3, 4-4, PageID.54, 56, 58) (color of text, and underscore drawn from Defendant's Exhibits).

---

[1] The mobile application and kiosk state a price of $10.99 but are otherwise identical to the statement found on the website. (ECF Nos. 4-3, 4-4).

Both the hyperlinks to "Terms and Conditions" and "Terms of Use," opening either a text box or separate page, state in relevant part on the first page:

> **IMPORTANT: THIS AGREEMENT INCLUDES RESOLUTION OF DISPUTES BY ARBITRATION INSTEAD OF IN COURT AND A CLASS ACTION WAIVER WHICH REQUIRES THAT ANY ARBITRATION CLAIMS MUST BE BROUGHT IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS REPRESENTATIVE OR MEMBER OR OTHERWISE ON BEHALF OF OTHERS IN ANY PURPORTED CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING. SEE SECTION 10 BELOW.**

(ECF No. 4-6, PageID.77) (boldface in original). The Arbitration Clause, found at § 9 of the Terms and Conditions, ends with following statement:

> THIS SECTION LIMITS CERTAIN RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO PARTICIPATE IN ANY FORM OF CLASS OR REPRESENTATIVE CLAIM, THE RIGHT TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED IN AAA RULES, AND THE RIGHT TO CERTAIN REMEDIES AND FORMS OF RELIEF. OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

(*Id*. at PageID.82) (capitalization in original).

### 2. Plaintiff's Arguments Against Arbitration

In opposition to Defendant's motion to compel arbitration, Plaintiff argues that he did not "manifest assent" to arbitrate as required for an enforceable agreement. (ECF No. 9, PageID.99). He contends that Defendant's failure to show that he had actual or inquiry notice "renders the

Agreement unenforceable." (*Id*.) (citing *Shirley v. Rocket Mortg.,* No. 21-cv-13007, 2022 WL 2541123, *6 (E.D. Mich July 7, 2022)) (Cox, C.J.). He takes issue with the need to hyperlink to access the terms of the Agreement, submitting that "courts are 'more reluctant to enforce this type of browsewrap" where consumers were "left unaware that contractual terms were even offered, much less that they modified the plain mean meaning of "[u]nlimited" and as a result "waived their constitutional right to a jury trial." (*Id*. at PageID.100) (citing *Shirley,* at *6) (internal citations omitted). Plaintiff faults Defendant for failing to provide a box to check "explicitly stating 'I agree'" to the terms and conditions "in order to proceed." (*Id*. at PageID.101) (citing *Shirley*, at *6) (internal citations omitted). He also argues that the "'Start My Subscription' button was not in capital letters or in the typical color of blue used to indicate assent." (*Id*.) (citing *Shirley*, at *6).

### 2. Parties Formed a Valid Contract

According to the terms and conditions of Plaintiff's membership in JoinMyPanera, Missouri law is to be applied in arbitrating claims. (ECF Nos. 4-5, PageID.60). However, "'[b]ecause arbitration agreements are fundamentally contracts,' the 'applicable State law of contract formation' applies to the determination of whether an arbitration agreement is enforceable." *Emerson v. Blue Cross Blue Shield of Michigan*, No. 2:22-CV-12576, 2023 WL 2145485, at *1 (E.D.

Mich. Feb. 21, 2023) (Murphy, J.) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). The Court therefore applies Michigan law to the threshold question of whether Plaintiff assented to resolving claims through arbitration. "The elements of a valid contract in Michigan are: '(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Hess v. Cannon Twp.,* 265 Mich. App. 582, 592 (internal quotation marks omitted). "' [A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose.'" *Id.* (quoting *Kloian v. Domino's Pizza L.L. C.,* 273 Mich. App. 449, 453-54 (2006)) (internal quotation marks omitted). "Generally, when asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Plaintiff does not dispute that he pressed the "Start My Subscription" button to subscribe to the Sip Club or that he obtained drinks on at least one occasion after subscribing. He does not contend that he lacked the competency to contract.

Rather, he simply argues that he did not accept conditions set forth in the Terms and Conditions. In opposition to Defendant's motion to compel arbitration, he claims that he had neither actual nor inquiry notice of the arbitration clause contained in the terms and conditions of the subscription which were available via the hyperlinks included in the paragraph directly preceding the "Start" button. Characterizing the disputed agreement as a "browserwrap agreement," he contends that the terms and conditions available only by hyperlinking from the paragraph prefacing "Start" was not sufficient to make him aware of the terms of the agreement. In contrast, Defendant refers to the terms and conditions available via hyperlink as a "modified clipwrap agreement" and argues that by pressing "Start," Plaintiff assented to the terms and conditions available by hyperlink. (ECF No. 4, PageID.42).

"Clickwrap," "browsewrap," and "modified" clipwrap agreements are defined as follows:

> A clickwrap agreement is one that 'require[s] the user to manifest assent to the terms by clicking on an icon.' *Traton News, LLC v. Traton Corp.*, 528 F.App'x. 525, 526 n.1 (6th Cir. 2013). Conversely, '[a] browsewrap agreement discloses terms on a website that offers a product or service to the user, and the user assents by visiting the website to purchase the product or enroll in the service.' *Id.*

*Scott v. RVshare LLC*, No. 3:21-CV-00401, 2022 WL 866259, at *3 (M.D. Tenn. Mar. 22, 2022). "Under either scenario, however, the threshold issue is the same: did the consumer have reasonable notice, either actual or constructive, of the terms

8

of the putative agreement and did the consumer manifest assent to those terms." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012), *aff'd,* 925 F. Supp. 2d 1185, 2013 WL 752155 (D. Colo. 2013).

In "modified clickwrap" agreements such as the one in this case, "the customer must take affirmative action—pressing a 'click' button—but, like a browsewrap agreement, the terms being accepted do not appear on the same screen as the accept button, but are available with the use of hyperlink. Under this hybrid arrangement, the customer is told that consequences will necessarily flow from his assenting click and also is placed on notice of how or where to obtain a full understanding of those consequences." *Vernon,* 857 F. Supp. 2d at 1150-51 (citing *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 839–40 (S.D.N.Y.2012); *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 911–12 (N.D.Cal.2011) ("valid contract" exists where "the terms of service were not visible on the page but were accessible via a hyperlink" pursuant to a "modified clickwrap" agreement). In *Vernon*, the court found that the plaintiff was bound by the terms contained in the modified clickwrap agreement, reasoning that while "the Subscriber Agreement and arbitration clause may not have been physically presented . . . and did not automatically appear on the subscriber's computer screen . . . those terms and conditions were not hidden or difficult to find." *Id.* at 1151.

Consistent with *Vernon,* Plaintiff was not required to access a website to access the terms of a "browsewrap" agreement, but rather, was warned in the paragraph directly preceding the "Start" button that he was bound by the terms and conditions which were available for review via hyperlink that was accessible from the very same paragraph. Even assuming that the subscription agreement could be construed as "browsewrap" rather than modified clickwrap, the result would not change. To be sure, "'[b]rowsewrap agreements have only been enforced when the hyperlink to the terms and conditions is conspicuous enough to place the user on inquiry notice.'" *Scott,* 2022 WL 866259, at *3 (quoting *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 765 (Fla. 4th DCA 2017)). However, "text either above or adjacent to the [start] button . . . clearly stat[ing] that by doing so, the subscriber is agreeing to the 'Terms of Service'" is sufficient notice of the terms of the agreement. *Id.* "If [the litigant] had clicked the hyperlink, he would have been clearly informed of the existence of the arbitration provision on the first page. 'A person has no right to shut his eyes or ears to avoid information, and then say he has no notice.'" *Id.* (quoting *MetroPCS v. Porter*, 273 So.3d 1025, 1028 (Fla. 3rd DCA 2018)). Again, this is not a case where the hyperlink takes the user to a website in which the agreement is buried among multiple pages of irrelevant information. Rather, Plaintiff was directed to the first page of the terms and conditions, which states in upper-case, bold-faced type that disputes related the

10

Sip Club subscription will be resolved through arbitration. (ECF No. 4-6, PageID.77).

### 3. The Terms and Conditions were Conspicuous

Plaintiff's additional argument that he did not receive inquiry notice because the hyperlinks contained in the paragraph above the "Start" button were not "the typical blue nor in capital letter to distinguish it from the rest of the text" is not well taken. (ECF No. 9, PageID.101) (internal punctuation omitted) (citing *Shirley,* 2022 WL 2541123, at *6). Inquiry notice "is established if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Shirley*, 2022 WL 2541123, at *5 (citing *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

While Plaintiff relies on *Shirley* for the proposition that he did not have inquiry notice of the Terms and Conditions, in fact the court in *Shirley* held that the terms and conditions (including the agreement to arbitrate disputes) were reasonably conspicuous. The court held that a text block in grey (either above or below the "Calculate" button) stating that the plaintiff was bound by the terms and conditions of the agreement (with hyperlinks to the terms and conditions in a contrasting color) was sufficiently "conspicuous" to establish inquiry notice. *Id.* at

*6.   Plaintiff attaches great significance to the fact that in *Shirley,* the hyperlink was "underlined and in blue," whereas here, the hyperlinks here are underlined and in *green*.  *Id.*   However, he offers no argument as to why Defendant's green hyperlinks, contrasting the rest of the text in grey, were not equally conspicuous as the blue hyperlinks in *Shirley*.  The Undersigned cannot conclude that the green hyperlinks to the terms and conditions in this case would be any less conspicuous.  As such, Plaintiff had inquiry notice of the Terms and Conditions of the Sib Club subscription.

### 3.  The Question of Whether the Sip Club Terms and Conditions were Unconscionable is Delegated to the Arbitrator

Having determined that Plaintiff's assented to the Terms and Conditions of the subscription, the question of whether the Agreement was unconscionable is to be determined in arbitration which under Terms and Conditions includes "all existing and future disputes" regarding the Sip Club subscription.  (ECF No. 4-6, PageID.82).   Indeed, the Complaint itself does not challenge the fairness of the arbitration clause, but rather, the Terms and Conditions regarding refills and the methods for canceling the subscription. "A party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement, but merely challenging the entire agreement will not suffice" to establish that the agreement is non-arbitrable.  *Swiger,* 989 F.3d at 506.

While in response to the present motion Plaintiff challenges the fairness of the arbitration clause, "[a] valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear wholly groundless." *Id.* at 505. Plaintiff's argument that his assent to resolve disputes through arbitration is a contract of "adhesion" because he lacked "alternative sources for fountain drinks" is without merit. "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term." *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 144 (2005). Plaintiff's argument that he was unable to procure affordable fountain drinks anywhere else but Panera strains the credulity of this Court.

Plaintiff's argument that the Agreement was substantively unconscionable because it prevents him from collecting damages under the MCPA or does not contain an "opt out" provision is also without merit. The first page of the Sip Club Agreement states that "If you do not agree to this Agreement, do not subscribe. Furthermore, if, at any time during your Subscription, you no longer agree with this Agreement or any updates to this Agreement (see Section 2 below), then you must cancel your Subscription." (ECF No. 4-6, PageID.77). The Agreement goes on to state that the subscriber may cancel the subscription "at any time," and after the monthly billing cycle ends, the subscriber would no longer be charged.

### 4. Defendant's Motion Should be Granted and the Action Should be Dismissed

13

Finally, because parties have a valid agreement and all of the disputes are reserved to arbitration, I recommend that the action be dismissed. Where "all claims are subject to arbitration, the litigation may be dismissed rather than stayed." *Nykoriak v. Experian Info. Sols., LLC*, No. 21-CV-12227, 2022 WL 4455548, at *2 (E.D. Mich. Sept. 23, 2022) (Drain, J.) (citing *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (6th Cir. 2021)).

To be sure, where questions of fact remain, "a court reviewing a motion to compel arbitration must apply the same standard of review as it would for a motion for summary judgment under Rule 56." *Shye v. Bookspan LLC,* No 1:21-cv-12285, 2022 WL 721525, at *6 (E.D. Mich., March 9, 2022) (citing *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021) (rejecting district court's analysis of motion to compel arbitration under Fed. R. Civ. P. 12(b)(6)).

But *Boykin* refrains from holding that Rule 12(b)(6) is a categorically improper standard when addressing a motion to compel arbitration, noting that "a defendant could rely on Rule 12(b)(6) alone if it thinks dismissal is proper." *Boykin,* at 838. And in contrast to the present case, the plaintiff in *Boykin* denied that he had assented to a contract and provided an affidavit in support of his denial, therefore creating a question of fact as to whether his claims were arbitrable.

In contrast here, neither Plaintiff nor Defendant disputes that Plaintiff subscribed to the Sip Club offer. The sole disagreement – whether Defendant

provided inquiry notice of the Terms and Conditions - has been laid to rest by Defendant's exhibits showing the proximity of the Terms and Conditions to the Start button and that the hyperlinks to same were displayed in a contrasting font color. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

### D. Conclusion

For these reasons, **IT IS RECOMMENDED** that Defendant's Motion to Compel and Dismiss the Complaint (ECF No. 4) **be GRANTED.**

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 6, 2023                                  s/PATRICIA T. MORRIS
                                                     Patricia T. Morris
                                                     United States Magistrate Judge